# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| LAMAR COUNTY ELECTRIC COOPERATIVE ASSOCIATION, | §<br>§<br>§<br>§ | Civil Action No.  4:20-CV-930 |
| | § | Judge Mazzant |
| *Plaintiff,* | §<br>§ | |
| v. | §<br>§ | |
| MCINNIS BROTHERS CONSTRUCTION, INC., WHIRLWIND STEEL BUILDINGS, INC., and TRIO FABRICATORS, INC., | §<br>§<br>§<br>§<br>§ | |
| *Defendants.* | §<br>§ | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Lamar County Electric Cooperative Association's Motion to Remand (Dkt. #5).  After considering the Motion and the relevant pleadings, the Court finds that the Motion should be granted.

## BACKGROUND

Plaintiff Lamar County Electric Cooperative Association ("Lamar"), a citizen of Texas,[1] initially brought this action in the 62nd Judicial District Court of Lamar County, Texas.  The events leading to the litigation began with Lamar entering into a construction contract with McInnis Brothers Construction, Inc. ("McInnis"), a Louisiana citizen,[2] to build Lamar's new headquarters

---

[1] Lamar is a "Texas electric cooperative" (Dkt. #1, Exhibit A at p. 1).  When a state agency is "separate and distinct from the state," it is considered a citizen of that state for diversity-jurisdiction purposes. *PYCA Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1416 (5th Cir. 1996).  As such, the Court treats Lamar as a citizen of Texas.

[2] For removal purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1). The Notice of Removal states that McInnis is a "corporation incorporated under the laws of the State of Louisiana with its principal place of business in . . . Louisiana" (Dkt. #1 at p. 2).  Therefore, McInnis is considered a citizen of Louisiana for these purposes.

(Dkt. #3 at p. 3).  McInnis was to oversee the project and, among other things, "enter into appropriate sub-contracts to ensure that the facility was built to the contractual design specifications" (Dkt. #3 at p. 3).  During the construction of the facility's roof, McInnis contracted with Whirlwind Steel Buildings, Inc. ("Whirlwind"), a citizen of Delaware and Texas, and Trio Fabricators, Inc. ("Trio"), a citizen of Louisiana, to manufacture the metal roof system and to install the roof, respectively (Dkt. #3 at pp. 2–3).  After installation was completed, Lamar inspected the structure and now alleges that the roof did not comply with the design specifications and was poorly installed (Dkt. #3 at pp. 3–4).

In its state-court complaint originally filed on November 6, 2020, Lamar sued McInnis, Whirlwind, and Trio, alleging that Defendants (1) breached a contract to "install a standing seem roof with 12" panels and all fasteners concealed in a good and workmanlike manner"; (2) committed negligence by failing to manufacture and install a roof "pursuant to the contract design specification in a good and workmanlike manner"; and (3) breached an implied warranty that "their work would be in a good and workmanlike manner" (Dkt. #3 at pp. 4–5).  Thirty days later, McInnis removed the action to federal court (Dkt. #1).  On December 30, 2020, Lamar filed its Motion to Remand (Dkt. #8), currently before the Court.  On January 13, 2021, McInnis filed its response to the remand motion (Dkt. #6).  On January 22, 2021, Lamar filed its reply (Dkt. #8).

## LEGAL STANDARD

"Federal courts are not courts of general jurisdiction" and can adjudicate only those matters "authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C.

2

§ 1441(a)).  As such, district courts are duty-bound "to ensure the existence of subject matter jurisdiction before reaching the merits of a case." *Small v. Zarvona Energy LLC*, No. CV H-20-1572, 2020 WL 2771188, at *1 (S.D. Tex. May 28, 2020); *see Humphrey v. Tex. Gas Serv.*, No. 1:14-cv-485, 2014 WL 12687831, at *2 (E.D. Tex. Dec. 11, 2014) ("In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction.").  Courts "must presume that a suit lies outside [its] limited jurisdiction," *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), and "[a]ny ambiguities are construed against removal and in favor of remand to state court." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).  "When considering a motion to remand, 'the removing party bears the burden of showing that federal jurisdiction exists and that removal was proper.'" *Humphrey*, 2014 WL 12687831, at *2 (brackets omitted) (quoting *Manguno*, 276 F.3d at 723).

## ANALYSIS

Defendants argue that remand is not warranted because (1) complete diversity exists among the properly joined parties and (2) McInnis did not waive its right to removal (Dkt. #6 at p. 2). The Court addresses each issue in turn.

### I.   Improper Joinder

It is undisputed that Lamar, a Texas citizen, and McInnis, a Louisiana citizen, have diversity of citizenship (*see* Dkt. #1 at p. 2; Dkt. #5 at pp. 6–7).  Accordingly, McInnis invoked the Court's diversity jurisdiction to remove this action to federal court (Dkt. #1 at pp. 1–3).  In doing so, McInnis asserted that the *proper* parties are completely diverse and Whirlwind could not be considered for diversity purposes because it is improperly joined to the action (Dkt. #1 at p. 3).

3

In response, Lamar moved to remand the case to the 62nd Judicial District Court, claiming that Whirlwind is properly joined and diversity of citizenship is, therefore, lacking (*see* Dkt. #5 at pp. 6–12).  The Court turns to this issue to determine if subject matter jurisdiction exists.

A defendant may remove a civil action from state court to a federal district court if the federal court has original jurisdiction over the action.  28 U.S.C. § 1441(a); *accord Tex. Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 485 (5th Cir. 2020).  Congress grants federal courts original jurisdiction over civil actions in which diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a)(1).  The diversity statute requires parties "to allege 'complete diversity.'"  *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam)); *see Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters Corp.*, 506 F.2d 757, 758 (5th Cir. 1975) ("While the rule of complete diversity is not of constitutional dimensions, the established judicial construction of the general diversity statute requires complete diversity." (citation omitted)).  Parties are completely diverse when "*each* defendant is a citizen of a different State [than] *each* plaintiff."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  Courts only consider the citizenship of "real and substantial parties" to the litigation.  *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980) (citing *McNutt v. Bland*, 43 U.S. (2 How.) 9, 15 (1844)); *see SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n*, 881 F.3d 933, 939–40 (5th Cir. 2018).  Courts determine this jurisdictional question "by looking at the complaint at the time the [notice of] removal is filed."  *Brown v. Sw. Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990); *see Louisiana v. Am. Nat. Prop. Cas. Co.*, 746 F.3d 633, 636 (5th Cir. 2014) ("[J]urisdictional facts are determined at the time of removal, and consequently post-removal events do not affect that properly established jurisdiction.").

Relatedly, Congress prohibits district courts from "exercising jurisdiction over a suit in which any party . . . has been *improperly* or *collusively* joined to manufacture federal diversity jurisdiction." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc) (citing 28 U.S.C. § 1359). If a party is "improperly joined,"[3] then that party is not considered "real and substantial" for purposes of the action. Accordingly, courts "may disregard the [improperly joined] party's citizenship" when analyzing a motion for remand. *See Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018).

A party seeking removal based on improper joinder "bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood*, 385 F.3d at 574. "The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983)); *see Smallwood*, 385 F.3d at 577 (explaining that the defendant must demonstrate "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant" for a court to find improper joinder). "In deciding whether a party was improperly joined," courts "resolve all contested factual issues and ambiguities of state law in favor of the plaintiff." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). "[T]he existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004). If "any doubt about

---

[3] In the past, courts used the term "fraudulent joinder," not "improper joinder." *See, e.g.*, *In re Norplant Contraceptive Products Liab. Litig.*, 889 F. Supp. 271, 274 (E.D. Tex. 1995). The Fifth Circuit has made clear that these phrases are substantively identical. *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 292 n.1 (5th Cir. 2019).

the propriety of removal" remains, the ultimate resolution must favor remand. *Gasch*, 491 F.3d at 281–82.

> In cases like the one currently before the Court,

> to determine whether the plaintiff has any possibility of recovery against the non-diverse defendant, the court should "conduct a Rule 12(b)(6)–type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."

*Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (en banc) (quoting *Smallwood*, 385 F.3d at 573). The Court now proceeds with its 12(b)(6) analysis of Lamar's claims against Whirlwind to determine whether Whirlwind is improperly joined.[4]

"Because *Smallwood* is 'the authoritative source of the Fifth Circuit's improper-joinder analysis' and requires courts to use the '12(b)(6)–type analysis,' the Court 'applies the federal pleading standard embodied in that analysis.'" *Bermudez v. Indem. Ins. Co. of N. Am.*, No. 4:20-CV-538, 2020 WL 5544561, at *3 (E.D. Tex. Sept. 16, 2020) (cleaned up) (quoting *Flagg*, 819 F.3d at 207–08). The Federal Rules of Civil Procedure require each claim in a complaint to include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must also include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Highland Capital Mgmt., L.P. v. Bank of Am., Nat. Ass'n*, 698 F.3d 202, 205 (5th Cir. 2012) ("A complaint is insufficient if it offers only 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When a plaintiff's

---

[4] When a "plaintiff's complaint 'misstate[s] or omit[s] discrete facts that would determine the propriety of joinder,' . . . court[s] may instead 'pierce the pleadings and conduct a summary inquiry.'" *Flagg*, 819 F.3d at 136 (quoting *Smallwood*, 385 F.3d at 573). The Court declines to do so here. *See Angelina's Mexican Rest. v. Allied Ins. Co. of Am.*, 4:20-CV-278, 2020 WL 4001864, at *3 n.3 (E.D. Tex. July 15, 2020) ("This decision is entirely within the Court's discretion.").

complaint fails to state a claim upon which relief can be granted, an opposing party may move for dismissal of the action.  FED. R. CIV. P. 12(b)(6).

Appropriate consideration of a 12(b)(6) motion requires all well-pleaded facts in the complaint to be accepted as true and viewed in the light most favorable to the plaintiff.  *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  Courts are limited in their review to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  Determining whether the complaint states a claim for relief that is plausible on its face is the next step.  A facially plausible claim "exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).  But if the well-pleaded facts preclude the Court from "infer[ring] more than the mere possibility of misconduct," then the complaint has not shown that the pleader is entitled to relief.  *Huawei Techs. USA, Inc. v. United States*, 440 F. Supp. 3d 607, 627 (E.D. Tex. 2020) (internal quotations marks omitted) (quoting *Iqbal*, 556 U.S. at 679).

In *Iqbal*, the Supreme Court established a two-step approach for assessing a complaint's sufficiency in the 12(b)(6) context.  First, courts should identify and disregard conclusory allegations because they are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 664.  Second, courts "consider the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."  *Id.*  "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S.

7

at 556).  Conducting a 12(b)(6) analysis is a contextual endeavor, and the Court "is entitled to 'draw on its judicial experience and common sense.'"  *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 348 (5th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 679).  For a complaint "[t]o survive a motion to dismiss, [it] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).

After consideration of Lamar's claims against Whirlwind, the Court is unconvinced that the claims survive 12(b)(6) scrutiny.  Plaintiffs assert claims against Whirlwind for breach of contract, negligence, and breach of implied warranty.  The Court addresses each in turn.

### a.  Breach of Contract

To prevail on its breach-of-contract claim against Whirlwind, Lamar must demonstrate "(1) the existence of a valid contract; (2) [Lamar] performed or tendered performance as the contract required; (3) [Whirlwind] breached the contract by failing to perform or tender performance as the contract required; and (4) [Lamar] sustained damages as a result of the breach."  *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).  Breaching a contract, however, first requires the formation of a contract, and no such contract exists between Lamar and Whirlwind (Dkt. #5 at p. 7–8).  *See House v. Hous. Waterworks Co.*, 31 S.W. 179, 179 (Tex. 1895) ("As a general rule, no person can sue upon a contract except he be a party to or in privity with it.").  Nevertheless, Lamar maintains the viability of its breach-of-contract claim against Whirlwind on the grounds that Lamar is "a third party beneficiary to the contract between McInnis and Whirlwind" (Dkt. #5 at p. 8).

"Parties are presumed to be contracting for themselves only."  *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003); *Graphic Packaging Corp. v. Hegar*, 538 S.W.3d 89,

105 (Tex. 2017).  But under the third-party-beneficiary exception to this general rule, a nonparty to the contract may sue for breach.  *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Corp.*, 995 S.W.2d 647, 651 (Tex. 1999).  A third-party beneficiary is "someone whom the contracting parties wanted to have the right to enforce [a] contract," *Thomas v. UBS AG*, 706 F.3d 846, 852 (7th Cir. 2013) (emphasis omitted), and an individual's third-party-beneficiary status depends "solely on the contracting parties' intent," *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017).  To establish third-party-beneficiary status, an individual must show "the contracting parties 'intended to secure a benefit to that third party' and 'entered into the contract directly for the third party's benefit.'"  *Id.* (quoting *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002)).  "Importantly, the fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement does not make him a third-party beneficiary." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 421 (Tex. 2011) (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1075 (5th Cir. 2002)).  "All doubts must be resolved against conferring third party beneficiary status." *Pak-Petro, Inc. v. Am. W. Home Ins. Co.*, No. 1:12-CV-247, 2013 WL 5356898, at *5 (E.D. Tex. Sept. 9, 2013) (citing *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)).

"To determine whether the contracting parties intended to directly benefit a third party . . . , courts must look solely to the contract's language, construed as a whole." *Brumitt*, 519 S.W.3d at 102.  "The intent to confer a direct benefit upon a third party 'must be clearly and fully spelled out or enforcement by the third party must be denied.'"  *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (per curiam) (quoting *MCI*, 995 S.W.2d at 652).  To recover as a third-party beneficiary, a party must demonstrate its status as "either a 'donee' or 'creditor' beneficiary" of a contract.  *Stine*, 80 S.W.3d at 589.  An agreement benefits a donee "if, under the contract, 'the

performance promised will, when rendered, come to him as a pure donation,'" while an agreement benefits a creditor "if, under the agreement, 'that performance will come to him in satisfaction of a legal duty owed to him by the promisee.'"   *Id.* (quoting *MCI*, 995 S.W.2d at 651); *see* RESTATEMENT (SECOND) OF CONTRACTS § 302(1)(a)–(b) (AM. L. INST. 1981 & 2020 Supp.).  If an individual "is benefitted only incidentally by the performance of the contract," then they are an "incidental beneficiary" and have no right to enforce a contract.  *Wagner v. Tex. A&M Univ.*, 939 F. Supp. 1297, 1315 (S.D. Tex. 1996).

Lamar alleges to be an intended third-party beneficiary to the contract between McInnis and Whirlwind (Dkt. #5 at p. 8).  Yet Lamar does not explain how it qualifies as either a donee or creditor beneficiary to the contract.  The Court has not been presented with evidence that Lamar received the roofing system as a pure donation or in satisfaction of a legal duty owed to it.  This evidentiary gap prevents Lamar from succeeding under the improper-joinder analysis on this claim.

Proving such a case would be difficult anyway.  The general rule regarding incidental beneficiaries finds its roots in the "respective interests of the property owner, general contractor, and subcontractors."  *Thomson v. Espey Huston & Associates, Inc.*, 899 S.W.2d 415, 419 (Tex. App.—Austin 1995, no writ).  The Austin court of appeals summarized as follows:

> [A] contract between the property owner and the general contractor gives the property owner the right to a finished building. Subsequent contracts between the general contractor and subcontractors add nothing to this entitlement; the owner is still entitled to the same building, regardless of the means by which it is constructed. These same subcontracts, however, are vital to the interests of the general contractor, who has assumed the obligation to deliver a finished building. In most cases, subcontracts will be necessary to enable the general contractor to deliver the building and avoid liability for breach of contract. This need, rather than the interests of the property owner who is entitled to a finished building both before and after the subcontract, is the primary motivation for subcontracting.

*Id.* And "when a subcontractor's performance falls short of what the owner expects," the contractor typically "makes up the difference." *Trebuchet Siege Corp. v. Pavecon Com. Concrete, Ltd.*, No. 05-12-00945-CV, 2014 WL 4071804, at *5 (Tex. App.—Dallas Aug. 19, 2014, no pet.) (mem. op.). "Mere knowledge that the property owner will benefit from the contract is insufficient to establish a third-party beneficiary arrangement." *Raymond v. Rahme*, 78 S.W.3d 552, 561 (Tex. App.—Austin 2002, no pet.) (citing *Espey Huston*, 899 S.W.2d at 420); *see* RESTATEMENT (SECOND) OF CONTRACTS § 302, illus. 19.

Whirlwind did not have a contractual relationship with Lamar. McInnis contracted with Lamar, and McInnis then contracted with Whirlwind. Lamar was not a party to that contract, and no evidence before the Court supports a finding that Lamar was a third-party beneficiary to McInnis's contract with Whirlwind. Because Lamar lacks privity of contract with Whirlwind and has not sufficiently demonstrated its third-party-beneficiary status to the McInnis-Whirlwind contract, the Court finds that Lamar cannot recover from Whirlwind for breach of contract.

### b. Negligence

Lamar next alleges that Whirlwind's actions "give rise to liability independent" of the Lamar-McInnis contract that "sound in tort," specifically a claim for negligence (Dkt. #5 at p. 8). Whirlwind disagrees, arguing that Lamar cannot recover from Whirlwind because of the economic loss rule (Dkt. #6 at pp. 11–12).

"When 'the only loss or damage' that a plaintiff has suffered 'is to the subject matter of [a] contract, the plaintiff's action is ordinarily on the contract.'" *AXA Art Americas Corp. v. Pub. Storage*, 208 F. Supp. 3d 820, 826 (S.D. Tex. 2016) (quoting *S.W. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991)). "Texas courts follow 'the economic loss rule, which generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a

contract when the harm consists only of the economic loss of a contractual expectancy.'"  *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 292 (5th Cir. 2016) (cleaned up) (quoting *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam)).  "The nature of the injury most often determines which duty or duties are breached.  When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."  *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *see Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804, 808–09 (5th Cir. 2020) (discussing the economic loss rule's rationale).

Framed broadly, the economic loss rule bars the recovery of "purely economic losses based on negligence."  *WC 1899 McKinney Ave., LLC v. STK Dall., LLC*, 380 F. Supp. 3d 595, 607 (W.D. Tex. 2019) (citing *Sharyland Water Supply Corp.*, 354 S.W.3d at 415).  Lamar's negligence allegations against Whirlwind concern the roof's "contractual design specifications," which explicitly stem from the terms of a contract (Dkt. #3 at p. 3).  Assuming without deciding that Lamar's assertion is accurate, this claim is "clearly premised on the alleged economic loss of contractual expectancy" (Dkt. #6 at p. 13), which warrants the exact type of requested relief the economic loss rule precludes.  *See Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 931 (N.D. Tex. 2014) (finding the economic loss rule to bar the negligence claim because of a failure "to allege an injury independent from the subject matter of the contract").  Because Lamar has not alleged any noneconomic injury, the Court finds that Lamar cannot recover from Whirlwind for negligence.

### c.   Breach of Implied Warranty

Finally, Lamar alleges that the roof Whirlwind manufactured "violated the implied warranties" of merchantability and fitness (Dkt. #5 at pp. 10–11).  As well, in its state-court

complaint, Lamar generally alludes to Whirlwind's alleged failure to supply the roof "in a good and workmanlike manner" (Dkt. #3 at p. 5).  Whirlwind responds that Lamar cannot recover for breach of implied warranty because there was "no direct contractual relationship" between Whirlwind and Lamar (Dkt. #6 at p. 13).

Lamar's arguments are unavailing.  To recover on a claim for breach of implied warranty of merchantability, a plaintiff must prove: "1) the defendant sold or leased a product to the plaintiff; 2) the product was unmerchantable; 3) the plaintiff notified the defendant of the breach; and 4) the plaintiff suffered injury."  *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App.— Tyler 2003, no pet.).  Lamar cannot recover under this theory because, among other things, it has not substantively alleged that the roof Whirlwind supplied was unmerchantable in any fashion. TEX. BUS. & COM. CODE ANN. § 2.314(b) (outlining what constitutes merchantability).  To recover on a claim for breach of implied warranty of fitness for a particular purpose, a plaintiff must prove: "(1) the seller had reason to know any particular purpose for which the goods were required at the time of contracting and (2) the buyer was relying on the seller's skill or judgment to select or furnish suitable goods."  *Hartford v. Lyndon-DFS Warranty Services, Inc.*, No. 01-08-00398-CV, 2010 WL 2220443, at *11 (Tex. App.—Houston [1st Dist.] May 28, 2010, no pet.) (mem. op.). Similar to the implied-warranty-of-merchantability claim, Lamar cannot recover under this theory because, among other things, it has not alleged to have relied on Whirlwind's skill or judgment to select or furnish a suitable roof.  *See, e.g.*, *Olympic Arms, Inc. v. Green*, 176 S.W.3d 567, 582 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

As for Lamar's implied-warranty theory pertaining to good and workmanlike conduct, the Court similarly finds this argument unconvincing.  "Texas courts have consistently held that a property owner may not recover under an implied warranty theory from a subcontractor with

whom the owner had no direct contractual relationship." *Dall. Drain Co., Inc. v. Welsh*, No. 05-14-00831-CV, 2015 WL 4114976, at \*8 (Tex. App.—Dallas July 8, 2015, no pet.) (mem. op.); *see, e.g.*, *P. McGregor Enters., Inc. v. Hicks Const. Grp., LLC*, 420 S.W.3d 45, 50–51 (Tex. App.—Amarillo 2012, no pet.); *Pugh v. Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 89–90 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Raymond*, 78 S.W.3d at 563.  Seeing no reason to imply the presence of such a warranty for public policy reasons, the Court finds that Lamar cannot recover under this theory.

### d.  Conclusion: Whirlwind is Improperly Joined

Having determined that Lamar fails to allege sufficient factual matter to state a facially plausible claim against Whirlwind, the Court finds Whirlwind improperly joined to the action.  As a result, the only "real and substantial" parties—Lamar, McInnis, and Trio—are completely diverse, and the Court has diversity jurisdiction over this action.[5]

## II.   Waiver of Removal

In an alternative attempt to have the case remanded to state court, Lamar contends McInnis waived its contractual right to removal.  In the Lamar-McInnis contract, the forum-selection clause reads:

> The Judicial Court in and for the County of the project location, State of Texas shall have sole jurisdiction and venue in any action brought under this contract.

(Dkt. #3, Exhibit B at ¶ 13.3.3).  Lamar argues that this language "constitutes a 'clear and unequivocal' waiver of federal removal rights because it establishes state courts located in Lamar County as an exclusive venue for bringing suit" (Dkt. #5 at p. 2).  McInnis disagrees, maintaining

---

[5] McInnis argues that Trio is also improperly joined (Dkt. #1 at p. 8).  Because Trio's citizenship would not affect the Court's analysis even if improperly joined, the Court does not analyze Trio in the improper-joinder analysis.

that "[a]t worst, the [forum-selection clause]  is ambiguous and therefore cannot constitute a 'clear and unequivocal' waiver of removal rights" (Dkt. #6 at p. 9).

"For a contractual clause to prevent a party from exercising its right to removal, the clause must give a 'clear and unequivocal' waiver of that right." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004) (citing *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1212–13 (5th Cir. 1991)).   Further, a contractual provision purporting to waive the right to removal "must be mandatory and not merely permissive." *Collin Cnty. v. Siemens Bus. Servs., Inc.*, 250 F. App'x 45, 51 (5th Cir. 2007). "Ambiguous language cannot constitute a 'clear and unequivocal' waiver," *Grand View PV Solar Two, LLC v. Helix Elec., Inc.*, 847 F.3d 255, 258 (5th Cir. 2017) (quoting *City of New Orleans*, 376 F.3d at 505–06), and "[a] waiver of a parties' removal rights need not contain explicit words," *Xome Settlement Servs., LLC v. Certain Underwriters at Lloyd's, London*, 384 F. Supp. 3d 697, 700 (E.D. Tex. 2019) (citing *Southland Oil Co. v. Miss. Ins. Guar. Ass'n*, 182 F. App'x. 358, 361 (5th Cir. 2006)).  Parties may waive their right to removal in three different ways: "[1] by explicitly stating that it is doing so, [2] by allowing the other party the right to choose venue, or [3] by establishing an exclusive venue within the contract." *Ensco Intern., Inc. v. Certain Underwriters at Lloyd's*, 579 F.3d 442, 443–44 (5th Cir. 2009) (internal quotation marks omitted) (quoting *City of New Orleans*, 376 F.3d at 504).  If any doubt exists as to "the propriety of removal," the Court must resolve it "in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

Because Lamar only argues that McInnis has contractually established an exclusive venue and thereby waived the right to removal, the Court does not consider the other avenues by which parties may waive this right.   The pivotal issue here is the proper interpretation of the

forum-selection clause.  When interpreting contractual provisions like a forum-selection clause, courts apply state-law contract principles to discern the parties' intent, if possible.  *SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 426 (5th Cir. 2016).  It is uncontested that Texas law applies here.

On the one hand, Lamar interprets the forum-selection clause to require this dispute to be litigated in state court located in Lamar County.  On the other hand, McInnis views the forum-selection clause differently, interpreting it to require litigation to occur in a state *or* federal court that has jurisdiction over Lamar County.  After exhaustively applying principles of Texas contract law to the forum-selection clause at issue, the provision demonstrates the unambiguous intent of the parties for the instant litigation to occur in state court located in Lamar County.

### a.  Analysis

#### i.  The Forum-Selection Clause is Mandatory

To begin, the language of the forum-selection clause indicates its mandatory nature.  That the adjudicating court "shall have sole jurisdiction and venue" concretely demonstrates that any action arising out of the contract must occur pursuant to the forum-selection clause.  On its own, the word "shall" is a strong, though not dispositive, indicator that a forum-selection clause is mandatory.  *Interactive Music Tech., LLC v. Roland Corp. U.S.*, No. CIV.A. 6:07-CV-282, 2008 WL 245142, at *3 (E.D. Tex. Jan. 29, 2008).  But further, the phrase "sole jurisdiction and venue" is the same as "sole jurisdiction and sole venue" under applicable contract law.  *See, e.g., Iliff v. Iliff*, 339 S.W.3d 74, 80 (Tex. 2011); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (2012) ("In the absence of some other indication, the modifier reaches the entire enumeration.").  For these reasons, the phrase "shall have sole

jurisdiction and venue" shows that the forum-selection clause in the Lamar-McInnis contract is mandatory.

### ii.  Meaning of the Forum-Selection Clause

Turning to the crux of the interpretive matter, the parties dispute the meaning of "in and for" in the forum-selection clause.  The dispositive words here are "in" and "and."

To start, the word "in" within the context of forum-selection clauses normally signifies "an intent to select the state and the federal courts" in a specific geographic area.  John F. Coyle, *Interpreting Forum Selection Clauses*, 104 Iowa L. Rev. 1791, 1828 (2019).  But when a county does not have a federal courthouse within its geographic bounds, state court is the only available option.  *E.g.*, *HJH Consulting Grp. Inc. v. Nat'l Steak Processors, Inc.*, No. SA-15-CV-0717-XR, 2015 WL 8335233, at *3 (W.D. Tex. Dec. 8, 2015).  The Fifth Circuit confirms as much.  In *Collin County v. Siemens Business Services, Inc.*, the forum-selection clause at issue read: "venue for all actions in connection with this Agreement shall lie exclusively *in* Collin County, Texas."  250 F. App'x 45, 47 (5th Cir. 2007) (emphasis added) (internal quotation marks omitted).  Although the Sherman Division of the United States District Court for the Eastern District of Texas encompassed Collin County, the absence of a federal courthouse in Collin County "prior to . . . removal of the action" was dispositive in demonstrating waiver of the removal right in accordance with the applicable forum-selection clause.  *Id.* at 53–54.  As a result, the Fifth Circuit affirmed the district court's order of remand.[6]  *Id.*

The circumstances are similar here.  The forum-selection clause at issue mandates that Lamar County—the county in which the project is located—shall be where litigation occurs (Dkt.

---

[6] Even though the *Collin County* court considered the circumstances to present "a very narrow, one-time question," 250 F. App'x at 54, the Fifth Circuit has subsequently cited the case approvingly in precedential cases.  *See, e.g.*, *All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399–400 (5th Cir. 2008).

#3, Exhibit B at ¶ 13.3.3).  The Court's enabling statute specifies that Lamar County falls within the Sherman Division.  28 U.S.C. § 124(c)(3).  But as with the situation in *Collin County*, there is no federal court regularly sitting in the county specified by the forum-selection clause.[7]  *Id.* ("Court for the Sherman Division shall be held at Sherman and Plano.").  Since no federal district court sat in Lamar County "at the time that [McInnis] removed the action," circuit precedent dictates that the right of removal was waived.

McInnis offers two arguments to the contrary, neither of which is persuasive.  First, McInnis argue that the word "for" in the forum-selection clause indicates that "a more reasonable interpretation" of the clause would be that venue is appropriate in the "courts possessing competent jurisdiction in Lamar County" (Dkt. #6 at p. 7).  This reading is flawed.  A cardinal principle of contract interpretation is that all provisions constituting a single contract must be given effect so none are rendered meaningless.  *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019); *In re First River Energy, L.L.C.*, 986 F.3d 914, 920 (5th Cir. 2021) ("Texas law . . . requires holistic construction of contractual provisions and 'giving effect to all of the provisions of the contract so that none will be rendered meaningless.'" (brackets omitted) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983))).  McInnis's proposed reading of the forum-selection clause skips over the word "in" entirely, thus violating this sacred rule of contract interpretation.

The correct way to read the term "for" in context is to view it in conjunction with the two preceding words, "in and."  *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)

---

[7] Lamar County formerly had an active federal courthouse in Paris, the county seat.  Act of June 26, 1948, ch. 646, § 124(c)(4), 62 Stat. 869, 892.  In 2003, Congress dissolved the Paris division and redesignated Lamar County, among others, within the Sherman Division.  Act of Dec. 3, 2003, § 1(a), 117 Stat. 1947, 1947; *see* MARK BARRINGER, COLLEGIALITY AND THE CONSTITUTION: THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, 1846–2006, at 100–03, 244, 248–249 (2020).

(reaffirming the "long-established rule that 'no one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions'" (brackets omitted) (quoting *Guardian Tr. Co. v. Bauereisen*, 121 S.W.2d 579, 583 (Tex. 1938))).  The word "and" joins "in" and "for," signaling that exclusive jurisdiction and venue lies with a court in *and* for the county, not in *or* for the county.  *Morello v. Seaway Crude Pipeline Co., LLC*, 585 S.W.3d 1, 16 n.9 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *accord Serafine v. Branaman*, 810 F.3d 354, 366 & n.29 (5th Cir. 2016).  Used as a preposition, the word "for" means "used as a function word to indicate the object or recipient of a perception, desire, or activity."  *For*, MERRIAM–WEBSTER, https://www.merriam-webster.com/dictionary/for (last visited Mar. 4, 2021).  While the Court certainly qualifies as a "[c]ourt for the Sherman Division," which encompasses Lamar County, 28 U.S.C. § 124(c)(3), the forum-selection clause here requires that the instant matter be resolved in a court that is *both* in *and* for Lamar County.  The federal district court only satisfies the "for" condition; each state district court is both "in" and "for" Lamar County.[8]  Therefore, the reasonable interpretation of the forum-selection clause indicates McInnis's waiver of its right to remove.

McInnis also argues that, at a minimum, the forum-selection clause agreed to by the parties is insufficient to establish waiver of the right to remove because it is ambiguous (Dkt. #6 at pp. 6, 9).  Other than its peculiar attempt to read "in" right out of the forum-selection clause, McInnis

[8] McInnis argues that ambiguity exists as to the state courts of Lamar County since the forum-selection clause contains the language "Judicial Court," and not, as Plaintiff phrases it, "state courts" (Dkt. #6 at p. 7 n.3).  McInnis is correct in its assertion that there are two state district courts covering Lamar County.  TEX. GOV'T CODE. ANN. § 24.106, .164.  But McInnis's claim that Plaintiff's interpretation would succeed only if the clause specified which of these courts had exclusive jurisdiction and venue is incorrect (Dkt. #6 at p. 7 n.3).  When a plaintiff presents a civil case to the District Clerk of Lamar County that does not implicate family law, the case is assigned by chance to either of the two state district courts.  Lamar County (Tex.) Dist. Ct. Loc. R. 3; *see* TEX. GOV'T CODE ANN. § 24.024 ("In a county with two or more district courts, the district judges may adopt rules governing the filing and numbering of cases, the assignment of cases for trial, and the distribution of the work of the courts . . . .").  Phrased differently, filing a civil case to the District Clerk of Lamar County's "Judicial Court" necessarily encompasses both state district courts in the county.

supports this position with vague considerations of its own intent and a supposed lack of "clear and unequivocal" waiver of its removal rights (Dkt. #6 at pp. 4–6).  But this is simply not how interpreting contracts works.  The fundamental task in contract interpretation is "to ascertain the intention of the parties *as expressed in the language used in the instrument itself*."  *Citizens Nat. Bank in Abilene v. Tex. & P. Ry. Co.*, 150 S.W.2d 1003, 1006 (Tex. 1941) (emphasis added).  "A contract's plain language controls, not 'what one side or the other alleges they intended to say but did not.'"  *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (quoting *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010)).  McInnis has not demonstrated the contractual language at issue to be ambiguous in any sense.  *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003) ("An ambiguity does not arise simply because the parties offer conflicting interpretations.").  As such, after examining the forum-selection clause in the manner Texas law instructs, the Court finds the clause to indicate McInnis's clear and unequivocal waiver of its right of removal.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Remand (Dkt. #5) is **GRANTED**, and this case is remanded to the 62nd Judicial District Court of Lamar County, Texas.

It is **FURTHER ORDERED** that the parties' Joint Motion to Suspend Pending Deadlines (Dkt. #9) is **DENIED as moot**.

**IT IS SO ORDERED.**

 **SIGNED this 19th day of March, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

20